1

2

3

4

5              UNITED STATES DISTRICT COURT

6                    DISTRICT OF NEVADA

7   SECURITIES AND EXCHANGE                Case No. 3:16-cv-00517-MMD-WGC
    COMMISSION,
8                                          **ORDER**
                              Plaintiff,
9                                          Re: ECF No. 7
           v.
10
    LOUIS V. SCHOOLER, and FIRST
11  FINANCIAL PLANNING CORPORATION
    d/b/a WESTERN FINANCIAL PLANNING
12  CORPORATION,

13                            Defendants.

14

15          Before the court is non-party Linda Schooler's Motion for Sanctions/Attorneys'

16  Fees. (Electronic Case Filing (ECF) No. 7.) The SEC has filed a response (ECF No. 8), and

17  Ms. Schooler filed a reply (ECF No. 11.)

18                               **I. BACKGROUND**

19          On September 11, 2011, the SEC sent an investigative subpoena to Louis Schooler.

20  (ECF No. 8-1 at 2 ¶ 4.) On September 4, 2012, the SEC filed suit against Louis Schooler and his

21  business, First Financial Planning Corporation d/b/a Western Financial Planning Corporation, in

22  the Southern District of California for violations of the Securities Act of 1933, 15 U.S.C. § 77q(a),

23  and the Securities Exchange Act of 1934, 15 U.S.C. §78j(b), 17 C.F.R. § 240.10b-5, 15 U.S.C. §§

24  77e(a), (c). (*See* 3:12-cv-02164-GPC-JMA and related cases.) The SEC alleged that Schooler and

25  his business bought undeveloped land in Nevada and then sold it to general partnerships comprised

26  of unsophisticated investors at grossly inflated rates. (*Id.*)

27  / / /

28  / / /

1  According to Ms. Schooler, she and Mr. Schooler were married, but lived separately for

2  several years. (*See* ECF No. 1 at 3.) They were legally separated (ECF No. 1-1 at 24, 32-37), and

3  the California Superior Court confirmed their formal marital separation agreement on May 9, 2014.

4  (*See* ECF No. 1 at 3; ECF No. 1-1 at 23-27.)

5  On February 23, 2016, judgment was entered against Mr. Schooler in the amount of

6  $147,610,280.00. (ECF No. 1-1 at 41-46.)

7  Ms. Schooler was advised by French authorities on July 11, 2016, that Mr. Schooler had

8  been found dead on his sailboat. (ECF No. 1 at 3:17-18.)

9  On July 14, 2016, the SEC issued a subpoena in aid of execution of the judgment to

10  Ms. Schooler, serving her at her home in Nevada. (ECF No. 1-1 at 48-64.) The subpoena sought

11  to depose Ms. Schooler, and requested the production of some fifty categories of documents. (*Id.*)

12  After discussing the subpoena with the SEC's counsel on the phone, Ms. Schooler's

13  counsel, Janine C. Prupas, Esq., emailed the SEC's counsel, Carol Schultze, Esq., on July 20, 2016,

14  indicating that she was confused about the scope of the subpoena given that Mr. and Mrs. Schooler

15  were no longer married and the judgment was not against her. (ECF No. 7-1 at 10.) Ms. Prupas

16  confirmed Ms. Schultze's statement during their telephone conversation that the primary focus of

17  the subpoena was to inquire about any recent asset transfers between Mr. and Ms. Schooler, and

18  on that basis Ms. Prupas stated her belief that the subpoena was overly broad. (*Id.*) In addition, she

19  asked to reschedule the deposition. (*Id.*) Ms. Schultze responded: "Yes, you are mistaken about

20  the subpoena being overly broad. Please produce all documents requested in our subpoena." (*Id.*)

21  On July 25, 2016, Ms. Schultze emailed Ms. Prupas that the SEC would agree to an extension of

22  the deposition to the week of September 12, and indicated the SEC expected to see Ms. Schooler

23  and asked that they provide all documents on a rolling basis as received from Ms. Schooler. (ECF

24  No. 8-2 at 18.) Ms. Prupas thanked Ms. Schultze for the extension. (*Id.*)

25  On July 28, 2016, Ms. Prupas served Ms. Schultze with Ms. Schooler's formal objections

26  to the subpoena. (ECF No. 7-1 at 25; ECF No. 1-1 at 66-88.) Ms. Prupas asked Ms. Schultze to

27  review and consider the objections, and let her know if the SEC was agreeable to narrowing the

28  requests as outlined in the objections. (ECF No. 7-1 at 25.) Ms. Prupas indicated that if she did not

1    hear from Ms. Schultze by August 2, she would assume the SEC was not so inclined and she would

2    proceed with filing an emergency motion to quash/protective order to narrow the scope. (*Id.*)

3    Ms. Schultze subsequently stated that she did not respond to this email because she and her

4    supervisor reviewed the objections and agreed the SEC still wanted all the documents it had asked

5    for, and she expected Ms. Prupas to file her motion. (ECF No. 15 at 7:21-23, 8:19-23.)

6        The next communication between counsel was an email from Ms. Prupas to Ms. Schultze

7    on August 25, 2016, referencing the objections to the subpoena. (ECF No. 7-1 at 9.) Ms. Prupas

8    also attached documents Ms. Schooler had agreed to produce including the prenuptial agreement,

9    marital separation judgment, deed and proof of mortgage for the home in Nevada, and a declaration

10   of homestead to the current home. (*Id.*) Ms. Prupas advised that Ms. Schooler was willing to

11   produce the marital settlement agreement subject to a protective order, and that Ms. Schooler was

12   aware of a safe belonging to Mr. Schooler and was willing to provide a list of its contents. (*Id.*)

13   She stated that based on Ms. Schultze's silence, it was her understanding that the SEC was

14   unwilling to meet and confer regarding the "overbroad and burdensome subpoena," but asked

15   Ms. Schultze to contact her in this regard. (*Id.*) Ms. Prupas reiterated her position that the subpoena

16   sought documents and testimony that were irrelevant. (*Id.*)

17       Ms. Schultze responded on August 31, 2016, stating that the SEC would agree to a

18   protective order regarding the marital separation agreement, but would not agree to narrow the

19   scope of the documents requested and asked that they be produced. (ECF No. 7-1 at 7.)

20       Ms. Prupas responded shortly thereafter and asked for insight as to why the SEC thought

21   all of the documents requested were still relevant. (ECF No. 7-1 at 7.) She sent a follow up email

22   adding that she was prepared to file the emergency motion to quash the following day if the SEC

23   was unwilling to meet and confer regarding the subpoena. (ECF No. 7-1 at 7.) Ms. Prupas sent

24   another email later that day indicating that she looked forward to hearing from Ms. Schultze (*id.*

25   at 8), and Ms. Schultze responded that she was on leave until Monday and would review the

26   communication upon her return (*id.* at 8-9).

27       There was apparently no further communication from Ms. Schultze, and Ms. Schooler filed

28   the emergency motion to quash or for a protective order on September 1, 2016. (ECF No. 1.)

1    She argued that the subpoena was overbroad, vague, and sought documents irrelevant to the issue

2    at hand—Mr. Schooler's assets and the transfer of those assets. (ECF No. 1.) She further argued

3    that the subpoena sought information regarding assets that are exempt from credits under Nevada

4    law.

5        The court held a hearing on the motion on September 7, 2016. (*See* Minutes at ECF No. 6;

6    transcript at ECF No. 15.) The court agreed with Ms. Schooler that while asset transfers between

7    Mr. and Ms. Schooler were a legitimate area of inquiry, the document requests were nevertheless

8    overbroad. (ECF No. 6 at 2' ECF No. 15 at 10-11.) The court ordered counsel to further meet and

9    confer to narrow the requests and resolve any disputes. (ECF No. 6 at 2; ECF No. 15 at 16, 18.)

10   Ms. Schultze indicated at the hearing that the requests could be narrowed. (ECF No. 15 at 18:21-

11   22, 20:4-5, 25:24-25.)  In conclusion, the court granted the motion to quash in part, and denied it

12   in part. (ECF No. 6 at 2; ECF No. 15 at 35.)

13       Ms. Schooler filed the instant motions for sanctions in the form of attorneys' fees on

14   September 13, 2016. (ECF No. 7.)

15       The parties filed a joint status report concerning where they stood with respect to narrowing

16   the document requests on October 10, 2016 (ECF No. 10), and the court held a status conference

17   on October 11, 2016. (*See* Minutes at ECF No. 1.4) The SEC agreed to narrow a majority of the

18   document requests, and the court addressed the remaining areas of dispute. (*Id*.)

19   **II. DISCUSSION**

20       Ms. Schooler's request for sanctions is premised on Federal Rule of Civil Procedure

21   45(d)(1) and 45(d)(3)(C)(ii). (ECF No. 7 at 3.)

22       Rule 45(d)(3) governs quashing or modifying a subpoena, and provides that the court must

23   do so where it subjects a person to undue burden. Fed. R. Civ. P. 45(d)(3)(A)(iv). In addition, the

24   court may quash or modify a subpoena if the subpoena would require the subpoenaed person to

25   disclose a "trade secret or other confidential research, development, or commercial information,"

26   or disclose certain information from an unretained expert. Fed. R. Civ. P. 45(d)(3)(B)(i)-(ii). Under

27   the circumstances just described in Rule 45(d)(3)(B), the court may also specify conditions for

28   responding to the subpoena as an alternative. Fed. R. Civ. P. 45(d)(3)(C). In order to do so, the

party serving the subpoena must show a substantial need for the subpoenaed information, undue hardship, and that the subpoenaed person will be reasonably compensated. Fed. R. Civ. P. 45(d)(3)(C)(i)-(ii). The reasonable compensation provision of Rule 45(D)(3)(c)(ii) does not apply to Ms. Schooler's motion to quash because it was not a subpoena that required her to disclose trade secret, confidential research, development or commercial information, or information from an unretained expert. Rather, the court granted Ms. Schooler's motion to quash (in part) based on a finding that the subpoena subjected her to an undue burden under Rule 45(d)(3)(A)(iv) because many of the requests were over broad and/or sought information that was irrelevant to the post-judgment efforts with respect to Mr. Schooler.

As such, Federal Rule of Civil Procedure 45(d)(1) allows the court to "impose an appropriate sanction--which may include lost earnings and reasonable attorney's fees--on a party or attorney who fails to comply" with the duty to "take reasonable steps to avoid imposing undue burden or expense on a person subject to the subpoena." Fed. R. Civ. P. 45(d)(1).

The court's power to impose an appropriate sanction under Rule 45(d)(1) is discretionary. *Legal Voice v. Stormans Inc.*, 738 F.3d 1178, 1185 (9th Cir. 2013). The court has discretion "over the type and degree of sanction imposed," and "[p]ayment of opposing counsel's attorneys' fees is one form of permissible sanction." *Mount Hope Church v. Bash Back!*, 705 F.3d 418, 425 (9th Cir. 2012) (citation omitted).

The authority on when it is appropriate to impose sanctions under Rule 45(d)(1) is sparse, but the Ninth Circuit has given some guidance to lower courts on this issue. "Merely losing a motion to compel does not expose a party to Rule 45 sanctions." *Legal Voice,* 738 F.3d at 1185 (citing *Mount Hope Church*, 705 F.3d at 425-27). "[The] failure to narrowly tailor a subpoena may be a ground for sanctions, [but] the district court need not impose sanctions every time it finds a subpoena overbroad; such overbreadth may sometimes result from normal advocacy, which we have said should not give rise to sanctions." *Id.* (citing *Mount Hope Church*, 705 F.3d at 426). "A court may, however, impose sanctions when a party issues a subpoena in bad faith, for an improper purpose, or in a manner inconsistent with existing law." *Id.* (citing *Mount Hope*, 705 F.3d at 425, 428; *Mattel Inc. v. Walking Mountain Prods.*, 353 F.3d 792, 814 (9th Cir. 2003)).

1    In *Legal Voice*, the Ninth Circuit upheld the district court's decision to not impose

2  sanctions where the district court denied a motion to compel as to eight of fourteen categories

3  requested. *Id*.

4    In *Mattel*, the district court concluded that the subpoena was "very broad," and "[n]o

5  attempt had been made to try to tailor the information request[ed] to the immediate needs of the

6  case." *Mattel*, 353 F.3d at 813. There, the Ninth Circuit affirmed the district court's award of

7  attorney's fees under Rule 45(d)(1) (formerly 45(c)(1)), based on these findings. *Id*. at 814.

8    Here, the court does not find that the SEC acted in bad faith in issuing the subpoena, but

9  the subpoena served on Ms. Schooler was blatantly overbroad and as in *Mattel*, the SEC made no

10 attempt to narrow the requests. The SEC had the opportunity to narrow its requests when

11 confronted by Ms. Schooler's objections and Ms. Prupas' emails, but instead simply insisted the

12 subpoena was not overbroad and demanded that the documents be produced as requested. (ECF

13 No. 8-2 at 18.) This necessitated Ms. Schooler's filing of the emergency motion to quash.

14    The SEC is correct that a judgment creditor, such as the SEC here, "may obtain discovery

15 from any person—including the judgment debtor—as provided in these rules or by the procedure

16 of the state where the court is located" "in aid of the judgment or execution." Fed. R. Civ. P.

17 69(a)(2). There is no doubt the subpoena issued to Ms. Schooler was designed to aid in execution

18 of the judgment against Mr. Schooler. Nor does the court disagree with the sentiment expressed

19 by judges in this district that the scope of post-judgment discovery is broad. *See e.g., Transfirst*

20 *Holdings, Inc. v. Magliarditi*, No. 2:16-cv-00322-APG-NJK, 2016 WL 3067437, at * 2 (D. Nev.

21 May 31, 2016) (citing *Henry v. Rizzolo*, No. 2:08-cv-00635-PMP-GWF, 2012 WL 13725, at * 3

22 (D. Nev. Jan. 4, 2012)). The court likewise agrees with the SEC that a judgment creditor may

23 obtain discovery from a non-party, such as Ms. Schooler, "including information about assets

24 upon which execution can issue or about assets that have been fraudulently transferred." *Id*.

25 (citing *Henry*, 2012 WL 13725 at * 3). In particular, "[w]here spouses are involved[1], even a

26 slight showing that there has been a transfer of property from the debtor spouse to the other

27 spouse may be sufficient for the court to allow a judgment creditor to delve into the personal

28

[1] Or recently separated spouses, as is the case here.

- 6 -

assets of a non-party spouse." *Id.* (citation omitted). Here, it is undisputed that Mr. Schooler knew about the action being taken against him by the SEC at least as of 2012; Ms. Schooler was married to Mr. Schooler until they were legally separated in May of 2014; and there was a transfer of property between them of the Incline Village, Nevada residence in 2015. (ECF No. 8-2 at 2-6; ECF No. 1-1 at 38-39.) Nevertheless, the court found the scope of the subpoena overbroad.

The subpoena requested a plethora of documents concerning Ms. Schooler's ownership interests in real and personal property, assets, trusts, pensions, mechanic's or other liens, all account statements from all types of accounts held, transfers of property, credit applications, charge card statements, insurance policies and claims, documents pertaining to any court proceeding she was involved in, complete federal and state tax returns, and a multitude of documents related to Mr. Schooler's business entities. Ms. Schultze confirmed that the intent of the deposition and request for documents was to look at Ms. Schooler's household income and any transfers between Mr. Schooler and Ms. Schooler; yet, the requests were not so limited. (Schultze Decl., ECF No. 8-1 at 3 ¶ 16; ECF No. 8-2 at 19 ("You indicated the primary focus of the deposition and subpoena is to inquire about any recent transfers between Mr. and Mrs. Schooler.").)

At the hearing, Ms. Schultze readily acknowledged that the requests could be narrowed, and upon engaging in the court-ordered meet and confer process, she did in fact agree to narrow a majority of the requests. (*See* ECF No. 11-1 at 5-6.) As a consequence of Ms. Schooler filing the motion to quash, the SEC agreed to limit requests 1-10, 12, 15-16, 18, 21, 22, 27-28, and 30, to the time period of 2012 to the present; to transfers between Mr. Schooler/his entities and Ms. Schooler; and in many cases to a value of $5,000 or more or $10,000 or more. (ECF No. 10.) In addition, various requests were withdrawn by the SEC. (*Id.*) A dispute remained as to requests 11(b), 20, 23 (withdrawn at the hearing), and 24, which the court resolved at the October 11, 2016 hearing. (*See* ECF No. 14.) Former Magistrate Judge Paul S. Grewal aptly described this all too common situation:

> A party demands the sun, moon and stars in a document request or interrogatory, refusing to give even a little bit. The meet and confer required by a court in advance

- 7 -

> of a motion is perfunctory at best, with no compromise whatsoever. But when the parties appear before the court, the recalcitrant party possesses newfound flexibility and a willingness to compromise. Think Eddie Haskell singing the Beaver's praises to June Cleaver, only moments after giving him the business in private.

*Boston Scientific Corp. v. Lee*, 5:14-cv-mc-80188-BLF-PSG, 2014 WL 3851157, at * 1 (N.D. Cal. Aug. 4, 2014).

While an attorney is certainly encouraged to be an advocate for her client in seeking materials relevant to her case, the court cannot countenance the SEC's conduct here—drafting an overly broad subpoena; making absolutely no effort to narrow the requested documents when confronted by objections and a charge of over breadth by opposing counsel; and then agreeing to narrow the requests when faced with a hearing on a motion to quash the subpoena and order to meet and confer. The SEC did not take reasonable steps to avoid imposing an undue burden on Ms. Schooler in responding to the subpoena. While the SEC eventually agreed to narrow and withdraw some of its requests, this was only after Ms. Schooler undertook the expense of filing the emergency motion to quash, which could have been avoided if the SEC had agreed to take another look at its requests when faced with Ms. Schooler's objections and counsel's insistence that the requests were overbroad. Therefore, in the exercise of its discretion, the court concludes that sanctions are appropriate under Rule 45(d)(1) and *Mattel*.

While the SEC argued that sanctions should not be imposed, it did not specifically contest the *amount* of sanctions sought, $10,661, as unreasonable. (Prupas Decl., ECF No. 7-1 at ¶¶ 17-18.) This amount consists of .3 hours spent by William Peterson, Esq., a 1969 J.D., at an hourly rate of $400; 25.9 hours spent by Ms. Prupas, a 2004 J.D., at an hourly rate of $350; and 7.2 hours spent by Michael Paretti, Esq., a 2015 J.D., at an hourly rate of $205.00. (*Id.*) In the court's experience the attorneys' respective rates are reasonable and in line with prevailing hourly rates for lawyers with similar experience in the community. The court likewise finds the amount of time spent is reasonable, particularly where there has been no objection by the SEC. Therefore, the court awards as sanctions the amount of $10,661.

/ / /

/ / /

1

### III. CONCLUSION

2       Ms. Schooler's motion for sanctions in the form of reasonable attorney's fees (ECF No. 7)

3 is **GRANTED**. The SEC shall pay the amount of $10,661 within **THIRTY DAYS** of the date of

4 this Order.

5 DATED: November 17, 2016.

6

7                                                      WILLIAM G. COBB

8                                                      UNITED STATES MAGISTRATE JUDGE

9

10

11

12

13

14

15

16

17

18

19

20

21

22

23

24

25

26

27

28